THE COOK LAW FIRM, P.C.
Philip E. Cook (State Bar No. 149067)
  pcook@cooklawfirm.la
Christopher E. Stiner (State Bar No. 276033)
  cstiner@cooklawfirm.la
707 Wilshire Boulevard, Suite 3600
Los Angeles, CA 90017
Telephone: (213) 988-6100
Facsimile: (213) 988-6099

Attorneys for Defendants DEUTSCHE
TELEKOM NORTH AMERICA, INC.,
DEUTSCHE TELEKOM AG, and
T-SYSTEMS NORTH AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NETWORK ENHANCED TECHNOLOGIES, INC., a California corporation, | Case No. 2:15-cv-01013 |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |
| Plaintiff, | |
| vs. | Hearing: |
| DEUTSCHE TELEKOM NORTH AMERICA, INC., a Delaware corporation; DEUTSCHE TELEKOM AG, a German corporation; T-SYSTEMS USA, INC., a Delaware corporation; T-SYSTEMS NORTH AMERICA, INC., a Delaware corporation; DOES 1 through 25, inclusive, | Date:    August 31, 2015<br>Time:    10:00 a.m.<br>Place:    Courtroom 5<br>          Hon. Christina A. Snyder |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In its opposition, Plaintiff Network Enhanced Technologies, Inc. ("NET") continues its vexatious litigation tactics, misrepresenting both the facts and the applicable law in another attempt to avoid its obligations under its contract with Defendant Deutsche Telekom AG ("DTAG").

NET does not dispute that Paragraph 15.6 of the May 22, 2012 Agreement on Hubbing, Trading, Termination for VoIP (NGVI) (the "Agreement") contains a choice-of-law provision, which provides that the Agreement "shall exclusively be construed in accordance with, and governed by, the laws of Switzerland." Nor does NET dispute that the Court should evaluate the enforceability of the parties' choice of Swiss law under *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992). But in its latest effort to escape the express terms of the Agreement, NET again tries to present itself as an innocent victim—seemingly confused and surprised by the application of Swiss law to which it agreed— rather than the sophisticated commercial enterprise that the Court has found NET to be. *See* ECF No. 24 at 7, note 1.

NET's Opposition misses the mark for several reasons. NET first ignores Defendants' showing that the international character of the parties' transactions and the multi-jurisdictional issues arising under the Agreement provide a "reasonable basis" to choose Swiss law. NET then argues that it somehow will be "prejudiced" if the Court applies Swiss law to award Defendants their attorneys' fees, while ignoring Defendants' reliance on Swiss law in their motion to dismiss, articulating no legal or factual basis for that prejudice, and apparently forgetting *its own request for attorneys' fees in its Complaint*. Finally, NET tries to manufacture a conflict between the parties' choice-of-law provision and their agreement to arbitrate— including a conflated interpretation of the International Chamber of Commerce

1  ("ICC") Rules of Arbitration—in challenging this Court's authority to award

2  attorneys' fees following its dismissal of the action.

3      As the Court well knows, the attorneys' fees incurred by Defendants in

4  responding to NET's Complaint are entirely a problem of NET's own making. In

5  filing this action, NET failed to comply with the express terms of the Agreement

6  and submit its dispute to arbitration (which, ironically, NET argues that Defendants

7  must do here to recover their fees). Simply, NET embarked on a strategy of

8  vexatious litigation, filing a parallel lawsuit in the United States (despite the

9  pendency of an ICC arbitration between the parties) and seeking recovery of its

10  own attorneys' fees from Defendants.

11      Having failed in its attempt to circumvent its agreement to arbitrate through

12  civil litigation, NET must be held responsible for the consequence of its ill-advised,

13  litigious strategy. The Court should award Defendants their attorneys' fees that

14  were incurred responding to NET's meritless Complaint, under Swiss law, as

15  required by the Agreement.

16                            **ARGUMENT**

17  **I.    The Arbitration Provision and International Character of the**

18        **Agreement Provides a Reasonable Basis for the Agreement's Choice of**

19        **Swiss Law.**

20      There is more than a reasonable basis for the parties' choice of Swiss law in

21  the Agreement. Under the California Supreme Court's decision in *Nedlloyd Lines*

22  *B.V. v. Superior Court*, 3 Cal. 4th 459 (1992), choice-of-law provisions in contracts

23  between commercial entities should be enforced, so long as there is a reasonable

24  basis for the parties' choice of law and applying the chosen law would not violate

25  California public policy. *Id.* at 466.

26      NET's opposition addresses *only* the first step of the *Nedlloyd Lines* analysis,

27  arguing that that the facts of the present case do not provide a "reasonable basis" for

28  the parties' choice of Swiss law. But in so doing, NET falsely states that all of the

1    parties were "conducting business in California." Opp. at 5:1-3. NET may well

2    have provided services to some of its customers in California, but there is no

3    allegation in the Complaint or other evidence before the Court in this case that

4    DTAG provided services to NET in California. In fact, DTAG provided those

5    services elsewhere, which was the whole point of the Hubbing Agreement—to

6    enable NET to access telephone routing and hubbing services outside the United

7    States, in particular in the Balkans. Compl., ¶ 20.

8        NET attempts to distinguish *Nedlloyd Lines* by describing the dispute in

9    *Nedlloyd Lines* as between two parties, both of whom were incorporated in Hong

10   Kong. However, the plaintiff in *Nedlloyd Lines* was a shipping company,

11   incorporated in Hong Kong but with its principal place of business in California;

12   the defendants were three other shipping companies, incorporated and with their

13   principal place of business in the Netherlands. *Id.* at 459. Despite this minimal

14   connection to Hong Kong, the *Nedlloyd Lines* court determined that there was both

15   a substantial relationship and a reasonable basis for the parties' choice of law

16   provision, directing the trial court to construe the contract under Hong Kong law.

17       Regardless, Defendants have not argued that the choice of Swiss law is

18   reasonable because one of the parties to the Agreement has a business connection

19   with or resides in Switzerland. Rather, as is common in commercial agreements to

20   arbitrate under the ICC Rules, contracting parties from different countries often

21   select the law of a neutral jurisdiction, as well as a neutral location in the event of a

22   dispute, to govern their relationship:

23           In international contracts, parties choose arbitration for a number
             of reasons, most notably because it avoids "hometown justice"—
24           that is, it provides a neutral forum that avoids litigation in either
             party's home court.
25

26   *Gulf Petro Trading Co. v. Nigerian Nat. Petroleum Corp.*, 288 F. Supp. 2d 783, 793

27   fn. 15 (N.D. Tex. 2003), *aff'd* (5th Cir. 2004) 115 F. App'x 201 (citation omitted).

28   Swiss law was both reasonable and had a substantial relationship to the Agreement

1    because DTAG's principal place of business is Europe and Switzerland is a

2    common seat of arbitration there.

3    Moreover, DTAG's geographic proximity to the selected forum, combined

4    with the desire of parties doing business in a number of different jurisdictions to

5    have a common jurisdiction's laws apply to all of their disputes, is a sufficient

6    "reasonable basis" for a choice of law provision. *See 1–800–Got Junk? LLC v.*

7    *Super. Court* (2010) 189 Cal. App. 4th 500, 512-15 (finding reasonable basis for

8    franchise agreement's choice of Washington State law where Canadian franchisor

9    operated in several U.S. states, had a legitimate interest in having the law of a

10   single state apply to U.S. operations, and Washington was the closest state to the

11   franchisor's headquarters in Vancouver, B.C.); *Cayanan v. Citi Holdings, Inc.*, 928

12   F. Supp. 2d 1182, 1195 (S.D. Cal. 2013) (finding reasonable basis for student loan

13   contract's choice of Nevada law even though the borrower lived in Connecticut and

14   Citi was not incorporated in Nevada, but where Citi had nationwide operations).

15   NET provides no countervailing authority indicating that this is insufficient.

16   NET also goes to great lengths to distinguish *Applera Corp. v. MP*

17   *Biomedicals, LLC*, 173 Cal. App. 4th 769 (2009), where the court held that "[t]he

18   Swiss law—the payment of attorney fees to the prevailing party—does not violate

19   California's public policy." *Id.* at 790. However, Defendants cite *Applera Corp.*

20   primarily for its rulings that (1) Swiss law provides for the recovery of attorneys'

21   fees by a prevailing party, and (2) such an award does not violate California public

22   policy (*i.e.*, the second step in the the *Nedlloyd Lines* analysis). NET attempts to

23   distinguish *Applera Corp.* on the grounds that one of the original parties to the

24   contract was Swiss, and thus does not lead to a conclusion that the choice of Swiss

25   law in this case had a reasonable basis. But NET does *not* dispute that *Applera*

26   *Corp.* held that an award of attorneys' fees to the prevailing party is proper under

27   Swiss law, or that such an award would not violate California public policy.

28

4

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

1    In short, because both the first and second steps of the *Nedlloyd Lines's*

2    analysis are satisfied, the Court should enforce the Agreement's choice-of-law

3    provision and award Defendants their attorneys' fees.

4    **II.    The Court's Analysis of California Case Law In Its Ruling Dismissing**

5    **This Action Does Not Affect the Contract's Choice-of-Law Provision.**

6    NET argues that California law must apply to the entire contract because the

7    Court's Order on Defendants' Motion to Dismiss cited California law in ruling on

8    Defendants' motion to dismiss. However, Defendants' analysis in their Motion to

9    Dismiss (ECF No. 18) clearly invoked Swiss law, as supported by the extensive

10   Declaration of Harold Frey (ECF No. 19). Defendants' and the Court's references

11   to California law were necessarily required in order to address the lack of merit in

12   NET's Opposition, which cited to and relied exclusively upon California law. For

13   NET now to argue that the Court implicitly found the parties' the choice-of-law

14   provision unenforceable on Defendants' Motion to Dismiss is baseless.

15   Regardless, courts "should conduct a choice-of-law analysis as to each

16   particular issue presented for decision." *Aronson v. Advanced Cell Tech.*, 196 Cal.

17   App. 4th 1043, 1050 (2011). The choice-of-law analysis for entitlement to

18   attorneys' fees must be addressed separately from the substantive analysis of

19   contract enforcement. *Id.* at 1050-51. And because the Court's Order on

20   Defendants' Motion to Dismiss did not analyze the Agreement's choice-of-law

21   provision, there cannot be any preclusive effect for it do so here.

22   NET then argues that it would be "prejudiced" if the Court were to invoke

23   Swiss law to award attorneys' fees because it apparently had no idea Swiss law

24   would be applied to the Agreement. But NET fails to make any effort to

25   demonstrate how NET could possibly be prejudiced if the Court were to apply

26   Swiss law now. There is no evidence of some Swiss legal doctrine that NET could

27   have relied upon in its Opposition to Defendants' Motion to Dismiss, or that NET

28   was misled regarding the choice-of-law provision in the Agreement. And NET's

argument ignores entirely Defendants' extensive citations to Swiss law in their Motion to Dismiss (as supported by the Declaration of Harold Frey). More importantly, NET included *in its own Complaint* a request for attorneys' fees and costs for each of its four Causes of Action. Compl. at 9:24-10:5. Because NET argues here that there is no basis under California law for such a request (Opp. at 3:10-26), one must surmise NET was expecting to request its own attorneys' fees under Swiss law had it prevailed, and now has changed its tune, refuting its false claim of prejudice.

### III.     There Is No Conflict Between the Agreement's Arbitration Provision and Its Choice of Swiss Law, and the Court Has Jurisdiction to Award Defendants Their Fees.

Perhaps most misguided and confused is NET's attack on construing and applying the provisions containing the agreement to arbitrate and the choice of Swiss law in the Agreement. NET contends first that the Frey Declaration is insufficient evidence of Swiss law. NET then seems to argue that because the parties agreed to arbitrate this dispute, the ICC Rules of Arbitration grant authority *only* to an arbitrator to award Defendants the attorneys' fees they incurred responding to NET's Complaint in this action.

NET describes the Frey Declaration's explanation that Swiss courts apply the "costs follows the event" rule when awarding attorneys' fees as "unconvincing," but provides no countervailing authority.[1] Under Federal Rule of Civil Procedure 44.1, courts may to consider "any relevant material or source, including testimony" in determining foreign law. Given the absence of competing authority or any reasoned objection to Mr. Frey's opinions, the Court should accept the Frey

---

[1] As referenced above, Defendants submitted a Declaration from Mr. Frey in connection with their Motion to Dismiss, as well as the instant Motion for Attorneys' Fees. NET did not object to or otherwise challenge Mr. Frey's opinions on Swiss law in its opposition to Defendants' Motion to Dismiss, but suggest now that his Declaration concerning fees should be disregarded for some unspecified reason.

1   Declaration (as well as the California Court of Appeal's conclusion in *Applera*
2   *Corp.*, 173 Cal. App. 4th 769) as a sound basis for establishing that attorneys' fees
3   are recoverable by the prevailing party under Swiss law.

4          NET also argues that Swiss law's provision for recovery of attorneys' fees
5   conflicts with the ICC Rules of Arbitration because the rules do not provide for the
6   recovery of attorneys' fees in court proceedings, only arbitrations. Although NET is
7   misreading the Frey Declaration in so contending, NET's argument fails for a more
8   fundamental reason. If NET had honored its agreement to arbitrate as required by
9   the Agreement, there would not have been a court proceeding, and Defendants
10  would not have had to incur attorneys' fees. NET cannot avoid its obligation to pay
11  Defendants' fees in this case, which it initiated, on grounds that an ICC arbitrator is
12  the only party with authority to consider Defendants' motion.

13         Moreover, NET's attempt to invoke Article 37 as a limit on the Court's
14  power to award attorneys' fees to the prevailing party conflates the parties' choice
15  of Swiss law and their agreement to arbitrate disputes, and would create an
16  unnecessary conflict between them. Courts should seek to harmonize choice-of-law
17  and arbitration provisions by avoiding interpretations that create a conflict between
18  them. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64
19  (1995) (finding that a choice of law provision did not prohibit the arbitrator from
20  awarding punitive damages despite prohibition in state law of such an award; "the
21  choice-of-law provision covers the rights and duties of the parties, while the
22  arbitration clause covers arbitration; neither sentence intrudes upon the other"); *see*
23  *also Dampier v. Solar & Environmental Techs. Corp.*, 2013 WL 5536359 at *4-*5
24  (Cal. Ct. App. Oct. 8, 2013) (awarding attorneys' fees under Hong Kong law
25  incurred in civil litigation after granting a motion to compel arbitration, and
26  *rejecting argument that the court lacked jurisdiction to award fees once it ordered*
27  *the dispute to arbitration*). Article 37 imposes no restriction on the Court's

28

authority to apply Swiss law, under which the "costs follow the event," and award Defendants their attorneys' fees as the prevailing parties in this action.

**IV.    Defendants Have Provided Sufficient Evidence of the Amount, Necessity For, and Reasonableness of the Fees They Incurred In This Case.**

NET argues that the amount of Defendants' attorneys' fees necessitated by their response to NET's vexatious litigation are unreasonable. Initially, the timesheets that NET argues should be required are not; a verified statement of attorneys' fees and costs "are prima facie evidence that the costs, expenses and services therein listed were necessarily incurred." *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 624 (1976). "California case law permits fee awards in the absence of detailed time sheets." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001).

Further, the Declarations of Andrew Rhys Davies and Philip E. Cook filed concurrently with Defendants' Motion for Attorneys' Fees (ECF No. 27) provide a detailed description of the rates charged, the professional experience of the attorneys, and the specific legal services provided. In addition, Mr. Rhys Davies' Declaration also explains a number of legal services that were incurred by the Defendants but that were not included in the amount requested in the Motion for Attorneys' Fees. *See* Rhys Davies Decl., ¶ 4. He also explains the extent of services provided, and why they were required under the circumstances of this case. *Id.*, ¶ 9.

In short, all of the legal services were reasonably and necessarily compelled by NET's own litigious conduct, filing a vexatious lawsuit on the same issues it had alleged in the parties' then-pending arbitration in Zurich, Switzerland. For these reasons, NET's criticism of the amount Defendants were forced to incur in responding to NET's lawsuit should fall flat, as Defendants have provided sufficient evidence for the Court to award attorneys' fees in the full amount requested.

## CONCLUSION

For each of the foregoing reasons, as well as those set forth in the moving papers, Defendants respectfully request that the Court grant their Motion for Attorneys' Fees and award Defendants $108,348.08.

Dated: August 17, 2015

Respectfully submitted,

THE COOK LAW FIRM, P.C.

By: /s/
    Philip E. Cook

Attorneys for Defendants
DEUTSCHE TELEKOM NORTH
AMERICA, INC., DEUTSCHE
TELEKOM AG, and T-SYSTEMS
NORTH AMERICA, INC.

Of counsel:

ALLEN & OVERY LLP
Andrew Rhys Davies (admitted *pro hac vice*)
    andrew.rhys.davies@allenovery.com
Justin L. Ormand (admitted *pro hac vice*)
    justin.ormand@allenovery.com
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

9